IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br><br>WALSH CONSTRUCTION COMPANY,<br>METROPOLITAN WATER RECLAMATION<br>DISTRICT OF CHICAGO,<br><br>Defendants. | Case No. 10 C 1565<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Scottsdale Insurance Company ("Scottsdale") and Walsh Construction Company ("Walsh) cross-move for summary judgment as to whether Scottsdale has a duty to defend Walsh in an underlying personal injury claim made by Dallas Shippy ("Shippy"), an employee of its subcontractor, Luise, Inc. ("Luise"). Shippy claimed in the underlying complaint (the "Complaint") that while he was operating his dump truck, he had to stop due to a bulldozer operated by a Walsh employee, who did not see him and backed the bulldozer into the dump truck, causing a collision and his injury. Shippy alleged that Walsh was negligent. Scottsdale alleges that negligence falls squarely within the exclusion to its insurance coverage for sole negligence. For the reasons set forth below, the Court denies Walsh's motion for summary judgment and grants Scottsdale's motion for summary judgment. Scottsdale, however, cannot recover defense fees as set forth below.

1

I. **MATERIAL UNDISPUTED FACTS**

A. **Underlying Lawsuit**

On September 2, 2008, Dallas Shippy sued Walsh in the Circuit Court of Cook County seeking damages for personal injuries he suffered in the crash while employed in the excavation of the McCook Reservoir in Willow Springs, Illinois. (Doc 79, Scottsdale 56.1 ¶¶ 1, 2; Doc. 83, Walsh 56.1 Resp ¶¶ 1, 2.) Shippy was an employee of Luise, Inc., a sub-contractor hired to provide material hauling services to the general contractor, Walsh Construction, Inc. (Scottsdale 56.1 ¶¶ 2-4; Walsh 56.1 Resp ¶¶ 2-4.) Shippy was assigned to drive an off-road dump truck on a gravel road that ran between a backhoe, where he would pick up a load of dirt, rock and soil, and a trap loader, where he would dump the load for separation. (Doc. 74, Walsh 56.1 ¶ 7, 16; Scottsdale 56.1 Resp ¶ 7.) Shippy claimed that on August 31, 2006, while driving the dump truck on the sole gravel road to the backhoe, he was required to stop because his path was blocked by a D10 bulldozer operated by a Walsh employee. (Scottsdale 56.1 ¶¶ 5-7, 16; Walsh 56.1 Resp ¶¶ 5-7, 16; Doc 79, Scottsdale 56.1 Exhibit A, Shippy Complaint 9, 12-13.) Shippy claimed that while his dump truck remained stopped, the Walsh employee did not see him and backed the bulldozer into the dump truck, causing a collision that threw the dump truck into the air with great force "causing it to hit the ground with the same great force." (Scottsdale 56.1 ¶¶ 8-9, 17; Walsh 56.1 Resp ¶¶ 8-9, 17; Shippy Complaint 13, 15-16.) Shippy sued Walsh, McCook Reservoir and the Metropolitan Water Reclamation District of Chicago negligence.[1] (Scottsdale 56.1 ¶ 10; Walsh 56.1 Resp ¶ 10.) Shippy also claimed that Walsh, as general contractor, owed him a duty to keep the premises in a reasonably safe condition and had the right to control the

---

[1] Metropolitan Water Reclamation District of Chicago was dismissed from the case on an agreed stipulation of dismissal.

reservoir roads and the manner in which the Luise employees performed their work. (Complaint ¶ 18.) Scottsdale alleges that Walsh breached its legal duty by: failing to warn and/or signal plaintiff that the operator of the bulldozer was backing up so as to avoid collision; failing to maintain a proper lookout while backing up; failing to operate and/or control its bulldozer in a safe manner; failing to brake; failing to oversee and supervise the use of a gravel road; and was otherwise negligent, all of which proximately caused the injuries. (Complaint ¶ 19.) The Complaint does not directly allege any negligence or breach of duty by Shippy's employer Luise. (Scottsdale 56.1 ¶ 18; Walsh 56.1 Resp ¶ 18.)

**B.     Present Coverage Dispute**

On May 16, 2008, Walsh tendered the underlying Shippy lawsuit to Scottsdale, requesting that Scottsdale defend and indemnify Walsh as an additional insured pursuant to the terms of Luise's policy (the "Policy"). (Scottsdale 56.1 ¶ 31; Walsh 56.1 Resp ¶ 31.) Scottsdale initially refused Walsh's tender, then subsequently accepted it on April 16, 2009, pursuant to a full reservation of rights, including its right to withdraw upon receipt of additional information that Luise's policy did cover the Shippy lawsuit and to recover its defense fees. (Scottsdale 56.1 ¶ 32; Walsh 56.1 Resp ¶ 32; Doc. 79-1 Exhibit F.) On February 8, 2010, Scottsdale informed Walsh that Scottsdale was withdrawing its defense due to the Illinois Court of Appeals decision in *National Fire Insurance of Hartford v. Walsh Construction Co.*, 392 Ill.App.3d 312, 909 N.E.2d 285 (Ill.App.Ct. 1st Dist. 2009). (Scottsdale 56.1 ¶ 33; Walsh 56.1 Resp ¶ 33; Doc. 79-1 Exhibit G.) On September 30, 2008, Walsh answered the Complaint and filed affirmative defenses, the content of which Scottsdale argues cannot be considered by this Court in determining the outcome of the present coverage lawsuit. (Doc. 83, Walsh Additional Facts ¶ 39; Doc. 105, Scottsdale Resp ¶ 39.) Walsh subsequently filed a third-party complaint for

contribution against Luise, and amended its affirmative defenses to the Complaint. (Walsh Additional Facts ¶ 46-47; Doc. 105, Scottsdale Resp ¶ 46-47.)

**C.      Relevant Terms of the Insurance Policies at Issue**

Scottsdale issued a liability policy to Luise that expressly provided coverage for damages because of "bodily injury" caused by an "occurrence." (Scottsdale 56.1 ¶ 26-27; Walsh 56.1 Resp ¶ 12-13.) The policy contains a blanket endorsement that includes as an additional insured any organization that Luise was required to add pursuant to a written contract. (Scottsdale 56.1 ¶ 29; Walsh 56.1 Resp ¶ 29.) The endorsement is subject to several limitations, including the following relevant exception: "Coverage is not provided for bodily injury . . . arising out of the sole negligence of the additional insured." (Scottsdale 56.1 ¶ 30; Walsh 56.1 Resp ¶ 30.) The Policy does not contain an express provision that Scottsdale could recover its defense costs. (Walsh 56.1 ¶ 30 ; Scottsdale 56.1 Resp ¶ 30.)

**II.     CHOICE OF LAW AND STANDARD**

The parties agree the Court should apply Illinois law. (Doc. 86, Scottsdale Additional Facts in Opposition to Walsh's Motion for Summary Judgment ¶ 20.) *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (internal citation and quotation marks omitted). Specifically, the Court will "apply the law that [it] believe[s] the Supreme Court of Illinois would apply if the case were before that tribunal rather than before this court." *Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001). Under Illinois law, "[t]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for

disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 620 N.E.2d 1073, 1079, 189 Ill. Dec. 756 (Ill. 1998).

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (citations omitted).

The Court grants Scottsdale's motion to strike the following paragraphs for failure to comply with Local Rule 56.1: in Walsh's Statement of Material Facts, paragraphs 8, 10-24, 29-31, 33, 39, 45, 46, 48 for alleging multiple facts, paragraphs 23-25 as unsupported by evidence, paragraphs 38-47 for presenting legal conclusions; in Walsh's Response to Scottsdale's 56.1

Statement of Uncontested Facts, paragraphs 7, 21, 23, 24 for including additional facts and opinions; in Walsh's Statement of Additional Facts, paragraphs 41-57, 59, 61, 63 for presenting speculative testimonial opinions as facts; in Scottsdale's Statement of Additional Facts, paragraphs 41-44, for surpassing the paragraph limit.

### III. DISCUSSION

#### A. The Duty to Defend Under Illinois Law

To determine if an insurer must defend its insured, the Court compares "the underlying complaint and the language of the insurance policy," resolving "[a]ny doubts as to whether particular claims fall within the policy . . . in favor of coverage." *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) (applying Illinois law); *Am. States Ins.Co. v. Koloms*, 177 Ill. 2d 473, 687 N.E.2d 72, 75, 227 Ill. Dec. 149 (Ill. 1997) (noting "[i]f the facts alleged in the complaint fall within, or potentially within, the language of the policy, the insurer's duty to defend arises"). "If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning" and conversely, "if the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy." *Id.*, 687 N.E.2d at 75 (citations omitted). An insurer may, however, "refuse to defend an action in which, from the face of the complaint, the allegations are clearly outside the bounds of the policy coverage." *McFatridge*, 604 F.3d at 338. In construing an insurance policy, "[a] court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Koloms*, 687 N.E.2d at 75 (internal citation omitted).

**B.	The Facts Alleged in the Complaint Do Not Establish a Duty to Defend**

Scottsdale's duty to defend Walsh in the underlying lawsuit would arise if the facts Shippy alleged in the Complaint fell within the language of the Policy.

Walsh claims that the underlying case is ultimately about a 'two-car' accident, which is a covered claim because both drivers are potentially negligent. Walsh's reasoning is that the "sole negligence" exclusion does not apply unless Scottsdale conclusively establishes that there is no possibility that something or someone other than Walsh's negligence was to blame for the employee's injuries. Such reasoning would force the Court to conclude that despite a sole negligence exclusion there is potential for coverage–and consequently a duty to defend–if there is any chance that something or someone other than Walsh's negligence was responsible for Shippy's injuries. "This approach would be contrary to well-settled precedent." *L.J. Dodd Constr., Inc. v. Federated Mut. Ins. Co.*, 848 N.E.2d 656, 661 (Ill. App. Ct. 2d Dist. 2006) ("Specifically, it would be contrary to the requirement that, in determining whether there is a duty to defend, we generally may consider only the allegations of the underlying complaint and the relevant policy provisions.").

To support this argument that Scottsdale must cover the accident, Walsh states: 1) Shippy sued an additional defendant, the MWRD [2]; 2) the road was shared by both Luise and Walsh employees and where an incident occurs involving two vehicles in the middle of that road, there is a possibility that both drivers bear some fault; 3) that the dump truck was thrown into the air raises the possibility that it was also moving when impact occurred with the bulldozer; 4) common sense dictates that an injured employee would not draft a complaint that expressly alleges his own negligence. In short, Walsh seeks to have the Court speculate regarding certain

---
[2] Shippy also sued McCook Reservoir; however, McCook Reservoir is not a legal entity that can be sued.

facts and how the accident occurred—something the Court need not do when interpreting a contractual provision.

The first fact presented by Walsh, the fact that the Complaint named the MWRD as a defendant and alleged a count of negligence against it, does not lead the Court to infer that Walsh is not potentially "solely negligent" and Walsh fails to cite any Illinois case law to substantiate such an inference.[3] The next three propositions by Walsh require this Court to speculate as to what may have caused the collision; in reality, Walsh's claim is that any construction site injury involving two individuals raises the possibility that one individual might not be solely negligent, and consequently triggers the duty to defend. To support that conclusion, Walsh relies heavily on *Illinois Emasco Insurance Co. v. Northwestern National Casualty Co.* 337 Ill.App.3d 356, 361, 785 N.E.2d 905, 909 (1st Dist. 2003) (insurer had duty to defend when policy covered only liability imputed from the subcontractor's negligent acts, despite the Complaint's failure to establish that the subcontractor qualified as a "duly qualified agent" and was estopped from raising any policy defenses for failing to bring a declaratory judgment action or defend under a reservation of rights). However, the Illinois Appellate Court has since precluded a general contractor from using *Emasco* to support that "so long as a complaint does not preclude or foreclose the possibility of a theory of liability that is covered by an insurance policy, the insurer would owe a duty to defend" stating such a "reading of the holding in *Emasco* goes too far." *Pekin Ins. Co. v. Roszak/ADC, LLC*, 931 N.E.2d 799, 806 (Ill. App. Ct. 1st Dist. 2010).

---

[3] In Scottsdale's Statement of Additional Facts in Opposition to Walsh's Motion for Summary Judgment (Doc. 86), Scottsdale states and Walsh agrees (Doc. 93) that O'Connor testified to the following:
¶ 28 Walsh has no reason to believe and has not received any information which in any way suggests that the MWRD had any culpability with respect to the Shippy occurrence (citing O'Connor's deposition testimony)
¶ 29 Walsh has never contemplated filing any type of contribution claim against MWRD (citing O'Connor's deposition testimony)

The Illinois Appellate Court explained:

> While we must construe the complaint liberally in favor of the insured (*Outboard Marine Corp.*, 154 Ill. 2d at 125), we are still tied to the words of the complaint. We cannot read into the complaint something that is not there. Instead, we must look to what the underlying plaintiff did allege and ascertain whether those allegations contain facts supporting the elements of a theory of liability that is covered by [the insurer]'s policy. Justice McNulty [in *Emasco*] clearly stated that such a theory must be "supported by the complaint." *Emasco*, 337 Ill. App. 3d at 361. A theory cannot be "supported by the complaint" if the complaint does not allege facts to support the elements of that theory. [*Id.*] Thus, if the allegations in the [employee's] complaint include sufficient facts to leave open the possibility of coverage, then [the insurer] owes [the general contractor] a duty to defend. [*Id.*] at 358. However, we will not read into the complaint facts that are not there.

*Roszak*, 931 N.E.2d at 806.

Similarly, Walsh seeks to have the Court read into the Complaint facts which are conjectural and speculative. From the face of the Complaint, the facts alleged are outside the bounds of the Policy coverage: Walsh maintained oversight of the work at the reservoir site, during which a Walsh employee backed his bulldozer into Shippy's stopped dump truck, causing a collision that threw the dump truck into the air with great force. This Court declines to speculate further as to the potential causes of such a collision. To apply Walsh's approach "would be searching our own imagination to find hypothetical possibilities potentially bringing the case within coverage . . . . This we may not do." *Id.* at 661.

Walsh contends that if this Court finds Scottsdale has no duty to defend, then the Court will be encroaching on the purview of the court and jury in the underlying lawsuit by making a substantive finding that Shippy and Luise were not negligent. (Doc. 73, Walsh's MSJ page 10). Instead, any speculation about those facts results in the type of fact conjecturing that the Illinois courts declared impermissible. *See Lexmark International v. Transportation Insurance*

*Company*, Ill.App.3d 128, 136; *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d at 196-197; *State Farm Fire & Casualty Co. v. Moore*, 103 Ill.App. 3d at 257.

## C.   The Complaint Suffices to Determine the Duty to Defend

Walsh attempts to have the Court analyze the evidence by directing attention to its own third-party complaint and testimonial evidence, pointing to possible liability for negligence on the part of Luise for failure to provide a safe work environment and appropriately train its employees. However, these matters do not control the comparison that must be made between the applicable Policy language and the facts alleged in the Complaint. *See Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) (applying Illinois law). As this Court has held previously, the Policy at issue here is not ambiguous and the coverage issue can be resolved as a matter of law without resorting to extrinsic evidence. *Scottsdale Indem. Co. v. Village of Crestwood*, 2011 U.S. Dist. LEXIS 64882 (N.D. Ill. June 13, 2011) (applying Illinois law); *see also Lincoln Gen. Ins. Co. v. Fed. Constr., Inc.*, 2010 U.S. Dist. LEXIS 128239 (N.D. Ill. Dec. 2, 2010) (applying Illinois law) (denying an insurer's duty to defend an additional insured against a jobsite injury claim and dismissing an investigation report and evidence pointing to the insured's possible individual liability for negligence).

Walsh relies on *Pekin Insurance Co. v. Wilson*, 237 Ill.2d 446, 930 N.E.2d 1011 (2010), to support its position that the Court must look beyond the Complaint. In *Wilson*, the Illinois Supreme Court considered a third-party complaint where the insurance policy contained a self-defense exception to the coverage exclusion for intentional acts. *Id.* at 1021. Because the motion called for judgment on the pleadings, the counterclaim filed in the underlying lawsuit had to be considered by the Court—otherwise there was no way to determine if a genuine issue of material fact existed as to whether the pleadings were "substantially insufficient in law." *Id.*

(citing 735 ILCS 5/2-615(b) (West 2006) for the rule that "[i]f a pleading or a division thereof is objected to by a motion to dismiss or for judgment or to strike out the pleading, because it is substantially insufficient in law, the motion must specify wherein the pleading or division thereof is insufficient"). Furthermore, the *Wilson* Court explained that the particularities of the policy language–an explicit self-defense exception–created "unusual or compelling circumstances" that necessitated such a departure and allowed the trial court to go beyond the sole allegations of the underlying complaint. *Id.* at 1022. Because self-defense can only be raised as an affirmative defense, unless the defendant-insured in the underlying lawsuit is allowed to plead facts alleging that the plaintiff's injury occurred through his use of self-defense, there is no way for the self-defense exclusion to be triggered, and the coverage is illusory. *Id.* at 1022-23.

In the present case, the policy language is straightforward and no such idiosyncrasy exists. Therefore this case is controlled instead by *National Fire Insurance of Hartford v. Walsh Constr. Co.*, 392 Ill.App.3d 312, 909 N.E.2d 285 (Ill.App.Ct. 1st Dist. 2009), and *L.J. Dodd Construction Co. v. Federated. Mutual Insurance Co.*, 365 Ill. App. 3d 260 (Ill. App. Ct. 2d Dist. 2006). *See id.* at 1022 ("In addition to the necessity under section 2-615(e) for the trial court to have examined the allegations in Wilson's counterclaim, we find that here, unlike *National Union Fire Insurance Co.* and *L. J. Dodd Construction, Inc.*, there were "unusual or compelling circumstances" requiring the trial court to go beyond the sole allegations of the underlying complaint to determine the insured's duty to defend.) In *L.J. Dodd*, the Illinois Appellate Court stated that the trial court "may not look to a third-party complaint 'absent some unusual or compelling circumstances' for doing so" and denied the insurer's duty to defend under a policy with a "sole negligence" exclusion. 365 Ill. App. 3d at 262.

In *National Fire*, the Illinois Appellate Court affirmed the trial court's grant of summary judgment for the insurer's declaration that it had no duty to defend Walsh, where the trial court found the facts alleged in the complaint fell squarely within the "sole negligence" exclusion to the insurance policy. 909 N.E.2d 285 at 287. The trial court refused to consider the allegations in Walsh's third-party complaint–principally, that the subcontractor failed to provide its employee with a safe work place and the support necessary to safely complete his work–because the complaint was filed "to pick up that which the underlying complaint didn't [state]." *Id.* at 287. The *National Fire* Court affirmed, and examined *Holabird & Root*, the case that Walsh cited in its briefings, both for that case and the instant case, to argue that the Court should consider extrinsic evidence in determining the duty to defend. *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 886 N.E.2d 1166, 320 Ill. Dec. 97 (2008). The *National Fire* court stated:

> A court's consideration of a third-party complaint is limited, however. In *American Economy Insurance Co. v. DePaul University*, . . . the companion case to *Holabird & Root*, we considered whether this exception once again applied. As in *Holabird & Root*, only the third-party complaint by the putative additional insured raised allegations of negligence against [the subcontractor], the named insured. In *DePaul University*, we rejected consideration of the third-party complaint because it was prepared and filed by the property owner, the party seeking coverage in that case. We declined to allow a putative additional insured to bolster its claim of coverage by referencing its own third-party complaint.

*Id.* at 293 (citing *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172, 890 N.E.2d 582, 321 Ill. Dec. 860 (2008)). Similarly, in the present case, Walsh's testimonial evidence is not entitled to such an exception; the underlying Complaint is sufficient to find that Scottsdale does not have a duty to defend Walsh.

**D.     Scottsdale Cannot Recover Its Defense Fees**

Walsh seeks summary judgment on the issue of whether Scottsdale can recover defense

12

fees paid from the time of acceptance of Walsh's tender under a reservation of rights (including the right to recoup its defense fees) until Scottsdale withdrew its defense. Illinois courts "refuse to permit an insurer to recover defense costs pursuant to a reservation of rights absent an express provision to that effect in the insurance contract between the parties," *General Agents Insurance Co. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 828 N.E.2d 1092, 293 Ill. Dec. 594 (2005); *See Zurich Specialties London Ltd. v. Vill. of Bellwood,* 2011 U.S. Dist. LEXIS 7271 (N.D. Ill. Jan. 26, 2011) (accord). The Policy does not contain an express provision that would provide Scottsdale with the ability to recover defense costs and fees paid out during the defense of a lawsuit against an insured.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Walsh's motion for summary judgment and grants Scottsdale's motion for summary judgment on the issue of whether Scottsdale has a duty to defend Walsh. In addition, the Court grants Walsh's motion for summary judgment on the issue of whether Scottsdale can recover defense fees.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 29, 2011

13